ARTHUR W. BRANNEN *vs.* EUGENE P. BOULEY & another.

Suffolk.     February 4, 1930. — June 30, 1930.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Contract*, Of employment, Validity. *Unlawful Interference. Equity Jurisdiction*, To restrain unlawful interference. *Evidence*, Competency, Statement by coconspirator, Res gestae.

A contract in writing between the proprietor of a towel supply and laundry business and an employee provided that it might be terminated by either party on a week's notice to the other, or by the employer without notice if the employee did not perform his duties properly; and that the employee, when he left the employment, would "not directly or indirectly for the period of two years from the time of leaving such employ solicit for himself or for any other person any of the laundry business or customers of . . . [the employer nor] attempt in any manner whatever to procure for himself or for any other person any of the established line of laundry customers of" the employer nor "solicit or collect, either for himself or for any other person or corporation, any laundry, commonly termed wet wash, within a radius of four miles from the laundry plant of" the employer. In a suit in equity to enjoin the employee and a new employer of his from conduct in violation of the contract, it appeared that it was not necessary, in order to protect the plaintiff in his business, to prohibit the employee from collecting wet wash in the entire territory described in the contract, and that the excess of territory named in the contract was not of trivial importance. *Held*, that it was consistent with public policy that the contract should be enforceable in equity even though it did not specifically indicate the municipal divisions from which the inhibited area was made up.

A contention of the defendants in the suit above described that the plaintiff should not be permitted to prosecute his suit because he was a member of an organization, whose members were engaged in the wet wash laundry business and who would like to see the plaintiff prevail, was dismissed by this court without discussion.

A master who heard the suit above described found that four persons other than the employee or his new employer were familiar with breaches of the contract by the employee and either aided or encouraged him; that one of them received some of the plaintiff's customers for bringing the employee in touch with the new employer; that the second was constantly in touch with the employee, understood what was going on and was thoroughly in sympathy with it; and that the third, under the employee's direction, obtained the customers. Although such persons were not made parties to the suit, the master admitted in evidence statements by them which were in support of the plaintiff's contentions. *Held,* that such statements were admissible without an amendment of the bill, as the evidence would justify the conclusion that the statements admitted were made by coconspirators to aid and accomplish the unlawful purpose of the employee.

Evidence properly was admitted, at the hearing of the suit above described, showing statements by former customers of the plaintiff accompanying acts of refusal further to deal with him and their reasons for such refusal.

BILL IN EQUITY, filed in the Superior Court on December 26, 1928, described in the opinion.

In the Superior Court, the suit was referred to a master. Material facts found, and rulings as to evidence made by the master are stated in the opinion. By order of *Bishop,* J., there were entered an interlocutory decree denying a motion to recommit the report to the master and overruling exceptions by the defendant to and confirming the report; and a final decree granting the plaintiff the relief stated in the opinion. The defendants appealed from both decrees.

*F. J. Muldoon,* for the defendants, submitted a brief.

*W. P. Dyer,* for the plaintiff.

PIERCE, J. This is an appeal by the defendants from an interlocutory decree whereby the objections and exceptions of the defendants to the master's report were overruled, and their motion to recommit was denied, and the master's report was confirmed. This is also an appeal by the defendants from a final decree restraining and enjoining the defendant Bouley for the period of two years from the twenty-ninth day of September, 1928, from disclosing the name or names of any customers of the plaintiff to the defendant McGowan or to any of his employees, agents or servants or any other parties; from soliciting, calling for or collecting any wet wash within certain territory described

in the decree; enjoining the defendant McGowan from receiving any of the laundry business from such customers, which was solicited or collected by said Bouley or through his efforts; and awarding damages against both defendants with costs.

The bill of complaint was brought by the plaintiff, as the proprietor of a wet wash business, against Eugene P. Bouley, a driver formerly employed by him, and Walter H. McGowan, the proprietor of a towel supply and laundry business, by whom Bouley was employed, to enjoin the alleged violation by Bouley of a contract made by him with the plaintiff whereby Bouley agreed not to solicit or disclose the plaintiff's customers, or to do anything to injure the plaintiff's business after leaving his employ; and to enjoin McGowan from continuing to receive the laundry of the plaintiff's customers; and for damages against both defendants.

The evidence is not reported. The facts found by the master disclose that the defendant Bouley entered the service of the plaintiff and signed the contract referred to in the bill of complaint on February 8, 1923, and that he left the plaintiff's employ in September, 1928. By the terms of the contract it was agreed that the employment was to be considered as an employment from week to week and that it might be terminated by notice of one week by one party to the other, or by Brannen without notice and without cause of action on the part of Bouley except for wages then earned if Bouley should not perform his duties faithfully. By the terms of the contract "Said . . . Bouley agrees that whenever he leaves the employ of said Brannen for any reason, he . . . will not directly or indirectly for the period of two years from the time of leaving such employ solicit for himself or for any other person any of the laundry business or customers of said Brannen and will not attempt in any manner whatever to procure for himself or for any other person any of the established line of laundry customers of said Brannen; it is an essential feature of this contract that such laundry business in which the said Eugene P. Bouley shall work for said Bran-

nen is the property of said Brannen and that said Eugene P. Bouley for the period of two years from the time of leaving the employ of said Brannen shall not do anything whatever to injure said Brannen in such ownership." It was also one of the terms of the contract that "The said Eugene P. Bouley further agrees that if for any reason, he shall leave the employ of the said Brannen, he will not solicit or collect, either for himself or for any other person or corporation, any laundry, commonly termed wet wash, within a radius of four miles from the laundry plant of said Brannen as now located at 74 Kent Street in Brookline," Massachusetts. The master finds that the radius of four miles in each direction from the plaintiff's plant, in Brookline, would start at Boston Harbor, run through Charlestown, Somerville, Cambridge, Watertown, Newton, West Roxbury, Hyde Park, Dorchester, South Boston to the Harbor again, including all Boston proper and Brookline, and found that it was not necessary to protect the plaintiff in his business to prohibit Bouley from collecting wet wash in the entire territory.

At the hearing the plaintiff made claim to the following places under the contract: "All of the town of Brookline; part of Newton including Dudley Road, Newton Centre, Station, Cypress Street and Centre Street; all of Brighton, Allston, Watertown and Cambridge, Boston Proper as far as the Public Garden and Broadway; all of Roxbury; all of Dorchester as far as the four mile limit from the Laundry of the complainant will cover; Namely, as far as Centre Avenue, Washington Street as far as Walton Street, Milton Avenue as far as Ashmont Street, Morton Street as far as the Morton Street Station on N. Y. N. H. & Hartford Railroad; Blue Hill Avenue as far as Fessenden Street, West Roxbury including Canterbury by the Mount Hope Cemetery, Clarendon Hills, Roslindale, Peters Hill, Highland Station on N. Y. N. H. & Hartford Railroad and as far as Corey Street and Wall Street; all of Jamaica Plain and the streets on the radius in between these points"; and disclaimed such places as South Boston, Charlestown, Somerville, Beacon Hill section of Boston, which are within the four-mile limit,

for the reason that he has no customers in those sections. As to this territory, which is less extensive than the four-mile limit, the master finds that the application of this clause of the contract is reasonably necessary to the protection of the plaintiff's business if he is within his rights in claiming it. We are of opinion the excess of territory within the four-mile radius which was found by the master to be unnecessary to protect the plaintiff's business cannot be said to be of trivial importance or a mere technical defence which equity will disregard; but we think it is consistent with public policy that a contract of the nature here presented should be enforceable in equity even though it does not specifically indicate the municipal divisions from which the inhibited area is made up. *Edgecomb* v. *Edmonston,* 257 Mass. 12. *Putsman* v. *Taylor,* [1927] 1 K. B. 637.

Without discussion, we think there is nothing in the contention of the defendants that the plaintiff should not be permitted to prosecute his suit because he is a member of an organization whose members are engaged in the wet wash laundry business and would like to see the plaintiff prevail.

During the hearing before the master the plaintiff offered to show that in addition to Bouley's personal solicitation he and McGowan combined to attack the plaintiff's business not only personally but through the instrumentalities of one Dudley, one Smallett, one Lawson and one McKinnon. The master finds that these persons were familiar with what Bouley was doing and either aided or encouraged him; that Smallett received some of Brannen's customers for bringing Bouley into contact with McGowan; that Dudley was constantly in touch with Bouley, understood what was going on and was thoroughly in sympathy with it; and that McKinnon, under Bouley's direction, obtained the customers. With this background of fact, in the absence of them as defendants, the plaintiff, subject to the objections of the defendants, offered and the master received statements made by McKinnon, Dudley, Lawson, and Smallett, tending to support the contentions of the plaintiff above stated. These statements were received by the master on the assurance that an amendment of the bill would be offered, if necessary.

There is nothing in the record to the effect that such an amendment was offered or if tendered was allowed. These statements were admissible without an amendment of the bill. The evidence would justify the conclusion that the statements admitted were made by coconspirators to aid and accomplish the unlawful purpose of Bouley. *Attorney General* v. *Pelletier*, 240 Mass. 264, 312, 313. *Connecticut Mutual Life Ins. Co.* v. *Hillmon*, 188 U. S. 208, 215, 217, 219. *Cooke* v. *Weed*, 90 Conn. 544. *Coburn* v. *Storer*, 67 N. H. 86. Wigmore on Evidence, (2d ed.) § 1079.

Subject to the objection of the defendants, one Blakeney, a route foreman for the plaintiff, was permitted to testify that he visited customers who had been formerly dealing with the plaintiff and asked them why they refused to continue to deal with him; that some said it was because they were friends of Bouley; several that they were going to give their laundry to Leaders Laundry; and others that it was because they were friends of McKinnon. The defendants asked that this evidence be struck out. One of the plaintiff's customers was a concern called the Unity Lunch, in Brookline. Subject to the objection of the defendants, the master admitted testimony of witnesses of the plaintiff of talks which took place at the Unity Lunch room as disclosing the reason the proprietor was "not sending, or continuing to send . . . [the] laundry work to Brannen's." The above evidence, and similar testimony which was offered and received against the objection of the defendants, were admissible as declarations accompanying acts of refusal to deal with the plaintiff within the principle of *Elmer* v. *Fessenden*, 151 Mass. 359, 361, *Weston* v. *Barnicoat*, 175 Mass. 454, and *Hubbard* v. *Allyn*, 200 Mass. 166, 174, and were not merely narrative statements or declarations which related to past events.

*Interlocutory and final decrees affirmed with costs.*