FULLERTON LUMBER COMPANY, Appellant, vs. TORBORG, Respondent.*

*May 2—June 1, 1955.*

* Motion for rehearing denied, with $25 costs, on September 13, 1955.

For the appellant there were briefs by *Moss & Wickhem* of Janesville, and oral argument by *Howard H. Moss*.

For the respondent there was a brief and oral argument by *Clifford C. Mullarkey* of Clintonville, and *Edward J. Hart* of Waupaca.

MARTIN, J.   We will first consider the question whether there is evidence to support the trial court's finding that there was a termination of the employment on June 7, 1947, and a rehiring thereafter under terms different from the employment agreement of April 15, 1946.

The conflict presented by the testimony is as follows: Mr. Butler stated that in a discussion with defendant on June 11th or 12th he pointed out that if the company was to consider his employment terminated he would have to work for five years to again become eligible for the pension and for three continuous months to qualify for insurance benefits; that if his week's absence were considered as a leave of absence rather than a termination, the pension funds and insurance could be left in force.   There is no question that after defendant went back to Clintonville on the 15th the pension and insurance remained in effect.   Defendant knew this and does not deny it.   Mr. Butler further testified that the company would not have hired defendant on any other basis than that of the employment contract since it was the company's established policy to require such contracts of employees who became eligible to participate in the pension plan.   At the trial defendant testified that although Butler mentioned the pension trust on the occasion of his rehiring, no agreement was made to treat the time off as a leave of absence.   The evidence also shows, however, that on an adverse examination he testified he could not recall anything about the conversation except that he was there.

In its decision the trial court stated that:

"If the plaintiff does prevail the restriction should be effective as of June 7, 1947, for most certainly the employment was then terminated regardless of how any party thereto chose to misstate the fact."

In our opinion the finding, based only on the negative and vague testimony of the defendant, is against the great weight and clear preponderance of the evidence.   At no time from

1947 until defendant quit did he indicate that he did not consider himself employed under the contract and during all that time he knew he was subject to the benefits of the pension plan. His acquiescence therein is contrary to the finding that the employment terminated in 1947.

There is no question that restrictive covenants of the type involved in this contract are lawful and enforceable if they meet the tests of necessity and reasonableness.

As stated in Restatement, 2 Contracts, p. 995, sec. 516:

"The following bargains do not impose unreasonable restraint of trade unless effecting, or forming part of a plan to effect, a monopoly: . . .

"(f) A bargain by an assistant, servant, or agent not to compete with his employer, or principal, during the term of the employment or agency, or thereafter, within such territory and during such time as may be reasonably necessary for the protection of the employer or principal, without imposing undue hardship on the employee or agent."

At page 988, sec. 515, of the same text, it is stated:

"A restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it

"(a) is greater than is required for the protection of the person for whose benefit the restraint is imposed, . . ."

It is established that:

"The burden rests upon the employer to establish both the necessity for, and the reasonableness of, the restrictive covenant he seeks to enforce by enjoining the employee from violating its terms." Anno. 52 A. L. R. 1364.

Cases such as *Midland Lumber & Coal Co. v. Roessler* (1930), 203 Wis. 129, 233 N. W. 614; *Kradwell v. Thiesen* (1907), 131 Wis. 97, 111 N. W. 233; *My Laundry Co. v. Schmeling* (1906), 129 Wis. 597, 109 N. W. 540; and *Cottington v. Swan* (1906), 128 Wis. 321, 107 N. W. 336,

where this court has upheld restrictive covenants, are not very helpful in this instance because they grow out of the sale of a business rather than employment. As pointed out in the Restatement, 2 Contracts, p. 989, sec. 515, comment *b* :

"No identical test of reasonableness applies to bargains for the transfer of land or goods or of a business, on the one hand, and to bargains for employment on the other. The elements that must be considered in order to determine reasonableness differ in the two cases, especially where the employment is of a specialized character, and familiarity and skill in it are assets of the employee. Limitations of his use of these assets are less readily supported than limitations of the use of property or in carrying on a business." See also Anno. 9 A. L. R. 1456 *et seq*.

Our court has consistently recognized this difference with respect to applying the test of reasonableness, *Milwaukee Linen Supply Co. v. Ring* (1933), 210 Wis. 467, 246 N. W. 567, and has allowed a much greater scope of restraint in contracts between vendor and vendee than between employer and employee. As there stated, page 473, "there is 'small scope for the restraint of the right to labor and trade and a correspondingly small freedom of contract.' " In all these cases the facts must be carefully scrutinized to determine whether the employee is restrained beyond the point where he could be reasonably anticipated to injure his employer's business. Where the facts warrant such a conclusion this court has held that the entire covenant must fall.

". . . if full performance of a promise indivisible in terms, would involve unreasonable restraint, the promise is illegal and is not enforceable even for so much of the performance as would be a reasonable restraint." Restatement, 2 Contracts, p. 1004, sec. 518.

We agree with the trial court that the ten-year period of restraint imposed by the instant contract is unreasonably long. There is no case cited where this court has upheld a

covenant in an employment contract restricting the employee from engaging in competitive activity for so long a time, and the evidence in this case does not establish that a ten-year restraint is necessary for the protection of plaintiff's business.

It cannot be seriously disputed, however, that defendant was plaintiff's key employee in the Clintonville yard. Being a foreign corporation with all its officers and supervisory employees outside of the state, the plaintiff necessarily depended for the growth and maintenance of good will in the Clintonville area upon the efforts and personal assets of the defendant. In the first three years of his employment as manager there he tripled the business of the yard and thereafter (with the exception of 1952 when the entire country experienced a building "boom") he maintained the sales at a level averaging well over $200,000 per year. He terminated his employment at the end of 1953 and immediately commenced operations in Clintonville in competition with the plaintiff. The sales of plaintiff's yard for 1954, based upon its business for the first five months of that year, were estimated at approximately $60,000, a decline of more than two thirds of the average annual sales of the previous years (excluding the peak year 1952).

These facts conclusively show not only that the business of plaintiff's Clintonville yard depended largely on the efforts and customer contacts of the defendant, but that it suffered an irreparable loss when defendant took those efforts and customer contacts, as well as three other employees of plaintiff's yard, into a competitive business immediately after he left its employ.

Defendant states in his brief:

"We concede at this point that plaintiff does have a legitimate interest in its business and good will which it is entitled to preserve by exacting a reasonable restrictive covenant from its manager. The testimony in this case clearly shows

that defendant has been able to establish a business at Clintonville which has substantially cut into the business of plaintiff. This, of course, was possible because defendant started his business immediately after he quit plaintiff, while all of his connections with the customers of the plaintiff were still strong. It is obvious that if defendant were removed from the scene for any extended period, and his place were taken by another Fullerton manager, the good will and trade of the plaintiff would be safe in the hands of the new manager."

There has been no case in this court where the facts presented such a clear need for the kind of protection plaintiff thought it was bargaining for when this contract was made. The facts show that it had every reason to anticipate its business would suffer if defendant, after developing and establishing personal relations with its customers in Clintonville, chose to leave its employ and enter into competition with it in that vicinity.

It is, of course, necessary to consider whether the legality of the covenant is open to objection on the ground of coercion or interference with individual liberty.

". . . injunctive relief will not be awarded against breach of a covenant the real purpose of which was to prevent the employee from quitting the employers' service." Anno. 52 A. L. R. 1363.

There is no evidence that such a purpose existed when this contract was drawn and the fact that defendant did in fact terminate the employment to carry on competitive operations shows that the restrictive covenant had no such deterring effect upon him. There is no showing that it had had that effect at any time while he was working for the plaintiff.

The evidence of irreparable damage to the plaintiff is so strong in this case that we have undertaken a thorough reconsideration of the rule that has obtained in Wisconsin— that a covenant imposing an unreasonable restraint is unenforceable in its entirety.

In *General Bronze Corp. v. Schmeling* (1932), 208 Wis. 565, 243 N. W. 469, where, in the sale of a business, the contract contained a restrictive covenant not to engage in a competitive business within certain states of the United States "nor within the Dominion of Canada or the Republic of Mexico," the court found no evidence that the plaintiff had ever had any business in Canada and Mexico. It was held that to the extent that the covenant restricted competition in those countries it was broader than reasonably necessary to protect the good will sold. The plaintiff contended that the contract by its terms was divisible and that such portions as were void by reason of being in restraint of trade could be separated and the contract enforced as to the proper territory. This contention was held valid.

The Massachusetts court has applied the rule that if the restrictive agreement as to territory is unreasonable, even though it be indivisible in terms, it is nevertheless enforceable for so much of the performance as would be a reasonable restraint. In *Whiting Milk Co. v. O'Connell* (1931), 277 Mass. 570, 574, 179 N. E. 169, 170, where the covenant in question restricted an employee from interfering with the business of the employer or selling dairy products to any of its customers, and it was found that the plaintiff's business extended over a large area of the state, the court held that the covenant was too broad. Although the contract was not by its own terms divisible, since it specified the prohibited territory in general terms, the court enjoined its breach to the extent of the customers the defendant had served while in the plaintiff's employ. It said:

"A contract in restraint of trade in which the territory is unreasonably extensive may be divisible as to space and enforced in equity within a reasonable area. *Edgecomb v. Edmonston*, 257 Mass. 12, [153 N. E. 99] ; *Brannen v. Bouley*, 272 Mass. 67, [172 N. E. 104]."

In a later case, *Metropolitan Ice Co. v. Ducas* (1935), 291 Mass. 403, 405, 196 N. E. 856, 858, the rule was extended to the time limitation imposed in a restrictive covenant of an employment contract. Referring to the application of the rule in the *Whiting Case* and others, the court said:

"No reason presents itself why the rule of reasonable enforcement as to space should not be applicable to time."

Whereas the agreement restriction was for a period of fifteen years, the court affirmed the decree of the lower court enjoining the defendant for eighteen months from the date of the decree.

In 5 Williston, Contracts (rev. ed.), p. 4679 *et seq.,* secs. 1659 and 1660, the author discusses the divisibility of promises and states that the traditional test of severability is the "blue-penciling" test (which this court applied in the *General Bronze Corp. Case, supra*). But he points out that in England, which is the source of this rule (as evident from the Massachusetts cases following it), it has been held that:

". . . where a negative restrictive covenant, indivisible in terms, extended beyond a time that the court in its discretion thought appropriate for an injunction, it granted an injunction for the period during which it deemed that remedy reasonable." p. 4683, sec. 1659.

In *Oregon Steam Navigation Co. v. Winsor* (1874), 87 U. S. (20 Wall.) 64, 70, 22 L. Ed. 315, 319, the plaintiff purchased a steamer from the California Steam Navigation Company subject to a stipulation that it should not be run upon any of the water routes of the state of California for ten years from May 1, 1864. In February, 1867, plaintiff sold the steamer to the defendants subject to the stipulation that it should not be employed on such routes for ten years from May 1, 1867. In a suit based on breach of the latter agreement it was held that the restrictive covenant was necessary

in order that the plaintiff might keep its covenant with the California Company, but since it extended three years beyond the period for which plaintiff was bound to the California Company, the extra period of three years was not necessary to the protection of the plaintiff. The court said:

"But the suit is brought and the breach is alleged for· a portion of time during which the Oregon Company is bound to protect the California Company from the interference of said steamer. And the question arises whether the contract is so divisible in relation to the California portion that it can stand for the seven years for which the Oregon Company is bound, though it be void as to the remaining three years. We think it is so divisible. It is laid down by Chitty as the result of the cases, and his authorities support the statement, 'that agreements in restraint of trade, whether under seal or not, are divisible; and, accordingly, it has been held that when such an agreement contains a stipulation which is capable of being construed divisibly, and one part thereof is void as being in restraint of trade, whilst the other is not, the court will give effect to the latter, and will not hold the agreement to be void altogether.' . . . We see no reason why this principle should not be followed in the present case. The line of division between the period which is properly covered by the restriction and that which is not so, is clearly defined and easily drawn. It is subject to no confusion or uncertainty, and the court can have no difficulty in applying it."

In *Gregory v. Spieker* (1895), 110 Cal. 150, 153, 42 Pac. 576, 577, 52 Am. St. Rep. 70, defendant sold to one Lee the formula for the manufacture of "Robert's Kidney and Liver Bitters" and the good will of the business of making and vending the same. The bill of sale concluded: "And I furthermore agree not to manufacture or sell any of said Robert's Kidney and Liver Bitters in this county. J. J. Spieker." Lee was the agent of the plaintiff,. to whom he assigned his property and rights under the instrument. Defendant thereafter manufactured and sold the same bitters under another name in the said county. A statute there applicable permitted re-

strictive covenants in the sale of the good will of a business " 'so long as the buyer or any person deriving title to the good will from him carries on a like business' " in the specified territory, and made contracts providing otherwise void " 'to that extent.' " It was contended that the covenant in question was void for lack of limitation to the time during which the buyer might carry on the business, and the court said:

"We think it reasonably clear that no design to impose a limit on the time during which defendant was restrained from carrying on the business in Sacramento county is inferable from the contract; and in that respect it transgressed the statute. But the statute does not render the whole provision void; it avoids it only 'to that extent,' viz., the extent that it transcends the permissive clause of the statute; within that limit it is valid."

The case of *John Roane, Inc., v. Tweed* (Del. 1952), 89 Atl. (2d) 548, 555, 556, 41 A. L. R. (2d) 1, arose out of the employment of the defendant by the plaintiff, an individual insurance-adjustment business, under a contract containing restrictive covenants not to solicit or take away any of the employer's customers or engage in competition with the employer within specified areas for five years following termination of the employment. The court found that the covenants, both as to territory and time, were too broad and held that neither could be enforced as written. It then applied the rule of partial enforcement and quoted from *American Weekly, Inc., v. Patterson* (1940), 179 Md. 109, 115, 16 Atl. (2d) 912, 915, as follows:

"It has long been the rule in this state that a covenant not to engage in business in competition with a business then being sold, will be enforced, but only to the extent necessary to protect the interest of the new purchaser. [Citing cases.]
"Where the covenant as originally drawn has been found too broad, courts have had no difficulty in restricting it to its proper sphere and enforcing it only to that extent. See Williston on Contracts, 4th ed., sec. 1660."

With particular respect to the question of the reasonableness of the five-year period, after discussing the testimony pertaining to the time that would have to elapse before a branch manager who had quit the territory would no longer be able to return and acquire his business, the court said (89 Atl. (2d) 557):

"In cases of this sort it is not unusual for the appellate court to make the necessary finding upon the available evidence."

Thereupon the court reduced the restriction to four years.

The court there recognized that the rule of partial enforcement of indivisible promises is an exception to the general principle, rarely departed from, that the courts will not enforce a contract in terms differing from the agreement made by the parties themselves, but stated that it has the support of high authority.

Williston, referring to such authority (including most of the cases dealt with above), stated in vol. 5 (rev. ed.), pp. 4683, 4684, sec. 1660:

"Covenants, in terms, unlimited as to time, have sometimes been divided in the way suggested, . . .

"While the Restatement of Contracts, sec. 518, has accepted the rule laid down by the majority of American courts as stated in the preceding section, the tendency of the late American cases has been toward the minority view, that the legality of contracts in restraint of trade should not turn upon the mere form of wording but rather upon the reasonableness of giving effect to the indivisible promise to the extent that would be lawful."

As stated in 6 Corbin, Contracts, p. 524, sec. 1394:

"As in the case of contracts restraining the seller of a business with its good will, the fact that the restriction on an employee goes too far to be valid as a whole does not prevent a court from enforcing it in part in so far as it is reasonable

and not oppressive. The injunction may be made operative only as to reasonable space and time; . . ."

It is our considered opinion that this view should be adopted in Wisconsin. While we recognize that the rule of partial enforcement of indivisible promises is a departure from that which this court has adhered to in the past, there is no departure from the general principle that contracts in restraint of trade are void as against public policy if they deprive the public of the restricted party's industry or injure the party himself by precluding him from pursuing his occupation and thus prevent him from supporting himself and his family. Where the terms of a restrictive covenant, not otherwise invalid, restrain an employee beyond either the area or the time within which an employer needs protection from competition by him, it is that excess of territory or time that is contrary to public policy and void.

As set out above, this court has been willing to apply the "blue-pencil" test to area restrictions (*General Bronze Corp. v. Schmeling, supra*), but we do not see why the basic reason for such willingness to enforce a contract after removing terms which are literally divisible should not also exist in the case of indivisible promises where the evidence is ample to support a finding as to the extent the restriction would be necessary and valid. Territory limits are by their nature more susceptible to separate specification than time and are often so expressed, but we see no difficulty in making a finding as to time upon evidence which is available to show the necessity for restraint in that respect.

In considering this rule, many authorities point to the danger that its application might tend to encourage employers and purchasers possessing superior bargaining power to insist upon oppressive restrictions. However, these contracts are always subject to the test of whether their purpose is contrary to public policy, and if there is any credible evidence

to sustain a finding that they are deliberately unreasonable and oppressive, such covenants must be held invalid whether severable or not.

The judgment is reversed, and the cause remanded for a determination by the trial court of the extent of time as to which the restrictive covenant with respect to defendant's operations in Clintonville is reasonable and necessary for plaintiff's protection, and for judgment enjoining defendant from a breach thereof. It appears to us that a minimum period of three years would be supported by the evidence. It was established that after defendant took over the managership of plaintiff's yard in 1945 he built the business to a fairly constant level in that period of time, and it must be assumed that any manager taking his place could accomplish the same thing if the restrictions of the contract were enforced against the defendant during that time. In view of the fact that defendant has engaged in continuous competitive activities since December 1, 1953, employing the advantage gained while he was in the service of the plaintiff, the injunction should run from the date of the judgment rather than the date the employment terminated.

We are not passing upon the reasonableness of the restrictive covenant with respect to competition by defendant in Arcadia and Gaylord, Minnesota. The record contains no evidence that restrictions are necessary for the plaintiff's protection in those areas, and a showing of necessity must be made before the covenant will be upheld as to those locations.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.

GEHL, J. (*dissenting*). The majority agree that the ten-year restraint imposed by the contract is unreasonably long. This court has consistently held that an unreasonably long restraint is unenforceable, void, and illegal. *Cottington v. Swan,* 128 Wis. 321, 107 N. W. 336; *My Laundry Co. v.*

*Schmeling,* 129 Wis. 597, 109 N. W. 540; *Durbrow Commission Co. v. Donner,* 201 Wis. 175, 229 N. W. 635; *Milwaukee Linen Supply Co. v. Ring,* 210 Wis. 467, 246 N. W. 567; *Wisconsin Ice & Coal Co. v. Lueth,* 213 Wis. 42, 250 N. W. 819, and that a void contract, one against public policy, cannot be made the foundation of any action, whether in law or equity. *Brill v. Salzwedel,* 235 Wis. 551, 292 N. W. 908.

It is true, as the majority say, that there has been a tendency on the part of some courts to ascertain whether a contract in restraint of trade is divisible and, if found to be, to hold it unreasonable only to the extent necessary for the protection of the covenantee. Unless that position is limited, however, as it has been by this court, it gives effect to the court's notion as to what should be included in the contract, rather than to the intent of the parties as expressed in the contract, the parties who, had they desired a narrower or a broader provision, should and could have expressed it in the writing. If the provision is to be treated as being divisible, such purpose must be found in the contract itself; that quality should not be supplied by the court simply because it might be considered that the parties should have made broader or narrower provision against possible competition than they did. That is the rule of this state.

*General Bronze Corp. v. Schmeling,* 208 Wis. 565, 243 N. W. 469, was an action brought by a corporation to restrain former stockholders from competition. The defendants had been the principal stockholders of a manufacturing corporation which had sold its assets to the plaintiff. By the terms of the agreement it was provided that the defendants would not within fifteen years from the date of the transfer engage in competition with the plaintiff in the United States, the District of Columbia, the Dominion of Canada, and the Republic of Mexico reserving, however, the right by the defendants to engage in a limited way in the state of Nevada.

The action was brought to restrain the defendants from violating the provisions of the covenant. The court said (p. 572):

"There is no evidence that the business of this company extended into Canada or Mexico, and to the extent that the covenant restricts competition in these countries it is broader than is reasonably necessary to protect the good will sold. However, it is contended by the plaintiff that the contract *by its own terms* is divisible, and that the portions of the contract which are void by reason of being in restraint of trade may readily be separated and dropped, and the contract enforced as to the proper territory. *Trenton Potteries Co. v. Oliphant,* 58 N. J. Eq. 507, 43 Atl. 723, 46 L. R. A. 255, 78 Am. St. Rep. 612; *Amalgamated Industrial Corp. v. Teichholtz,* 177 App. Div. 456, 164 N. Y. Supp. 289; *John T. Stanley Co. v. Lagomarsino,* 53 Fed. (2d) 112; *Fleckenstein Bros. Co. v. Fleckenstein,* 76 N. J. L. 613, 71 Atl. 265, 24 L. R. A. 913–920; 30 Michigan Law Review, p. 1111. [Emphasis supplied.]

"We have concluded that this contention is valid. The parties have adopted as one unit of the restrictive agreement the states and territories of the United States and the District of Columbia, descriptive in a territorial sense of the entire United States; as a second unit the Dominion of Canada, and as a third unit the Republic of Mexico. These areas are disjunctively described and furnish a proper basis, under the doctrine of the foregoing cases, for dividing the covenant and enforcing it in the territory which is coextensive with the business of the old company."

It will be observed that the court said and pointed out very clearly that the contract "by its own terms is divisible." It could not be questioned that if the divisibility as to area should appear in the contract itself, the same requirement should apply as to time. This case is cited in the opinion of the majority, but the majority omits to refer to the fact that the court based its conclusion upon the fact that the contract was by its own terms divisible.

The question in *Wisconsin Ice & Coal Co. v. Lueth,* 213 Wis. 42, 250 N. W. 819, was whether the territory covered

by a restrictive covenant was unreasonably large in view of the circumstances. We said in that case (p. 47):

"If the contract is unreasonable in its territorial scope, and *if the contract itself* furnishes no basis for dividing the territory to which the restriction applies, the restrictive covenant is void and is not aided by the plaintiff's willingness to accept in the injunctional order a restriction that is proper in scope." (Emphasis supplied.)

I have found no Wisconsin case which suggests that the court, rather than the parties who made the contract, should be permitted to substitute arbitrarily for the parties a provision making an indivisible covenant divisible. The citation of text authorities and of cases from other jurisdictions "is but misplaced industry." They are of no help to this court which has so clearly stated the rule that if a covenant is to be treated as being divisible and therefore enforceable to the extent that it is a reasonable restriction, the fact of divisibility must appear from the contract itself. If it can be said that a single provision as to time, ten years as is this case, is divisible and it is possible to read that quality out of the terms of the contract, then it is only reasonable to ask, how could a provision indivisible as to time be effectively expressed?

It is apparent that the majority have construed the contract and applied a rule in the light of what has taken place since its execution. It occurs to me to inquire: As of what time are we to determine that the terms of a contract are or are not unreasonable? Is it to be determined as of the time of its execution, or as of a later time? May we say that a contract is void and then, not because of its terms, but because of the manner in which one of the parties to it has subsequently construed its terms, or because he has violated its provisions to the loss of the other party, still hold it enforceable in whole or in part? I doubt it.

In *Sheffield-King Milling Co. v. Jacobs*, 170 Wis. 389, 175 N. W. 796, we said (p. 400):

"The validity of a contract is to be determined as of the date of its execution, and a contract valid when made cannot be rendered invalid even by legislative action. *Superior v. Douglas Co. Tel. Co.* 141 Wis. 363, 122 N. W. 1023. It is the situation of the parties at the time of the inception of the contract that governs. *Davis v. La Crosse H. Asso.* 121 Wis. 579, 99 N. W. 351."

It would seem that if a provision of a contract valid when made cannot be rendered invalid even by legislative action, one invalid when made cannot be validated, in whole or in part, by action of the parties.

The mere fact that developments subsequent to the execution of the contract show that the parties, or one of them, should have made a better bargain for himself does not affect the situation. *Miller Saw-Trimmer Co. v. Cheshire,* 172 Wis. 278, 178 N. W. 855.

I would affirm.