GENERAL MEDICAL CORPORATION, Plaintiff-Appellant,

v.

James KOBS, Defendant,

BADGER MEDICAL SUPPLY COMPANY, a Wisconsin corporation, Defendant-Respondent.

Court of Appeals

*No. 92–2857. Submitted on briefs July 9, 1993.—Decided September 23, 1993.*

(Also reported in 507 N.W.2d 381.)

■■■■■■■■■

■■■■

■■■■■■■■■■

For the plaintiff-appellant the cause was submitted on the briefs of *Ronald G. Pezze, Jr.*, and *Terry E. Johnson* of *Peterson, Johnson & Murray* of Milwaukee, and *Daniel A. Carrell* and *Michael C. Whitticar* of *Hunton & Williams* of Richmond, Virginia.

For the defendant-respondent the cause was submitted on the brief of *H. Dale Peterson* and *Richarld L. Bolton* of *Stroud, Stroud, Willink, Thompson & Howard* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J.   General Medical Corporation sued Badger Medical Supply Company for tortious interference with a contract. General claimed that when Badger, one of its competitors in the medical supply business, hired a former General employee, James Kobs, it wrongly interfered with a restrictive covenant in Kobs's employment contract prohibiting him from competing with General for a period of time after leaving his job.[1]

The trial court granted Badger's motion for summary judgment dismissing the action, ruling that the covenant was invalid *per se* under sec. 103.465, Stats.[2] General appeals, claiming that summary judgment

---

[1] Generally, the contract prevented Kobs, for a period of eighteen months after leaving General, from: (1) soliciting, selling to, or serving his former customers; and (2) affiliating with any company that solicited, sold to, or serviced any such customers.

[2] Section 103.465, Stats., which in Wisconsin governs covenants not to compete, reads in relevant part:

was inappropriate and that the covenant was reasonable and enforceable under Wisconsin law.

We conclude that, under *Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton*, 101 Wis. 2d 460, 304 N.W.2d 752 (1981), absent a trial of material disputed facts in the case, we are unable to determine whether the covenant was reasonable. We therefore reverse and remand to the trial court for further proceedings.

Kobs was employed by General to sell medical supplies in the La Crosse area. His employment contract contained the clause we have briefly described above. It provided, in its entirety, as follows:

> I [Kobs] will not, for a period of 18 months after the end or termination of my employment, irrespective of the time, manner or cause of such termination, directly or indirectly, either as principal, agent, employee, employer, stockholder, partner or in any other individual or representative capacity whatsoever, solicit, sell or render services to, or engage, assist, be interested in or connected with any other person, firm, or corporation soliciting or servicing, any of the customers solicited, sold to or serviced by me at any time during the 18 months immediately preceding termination of my employment with [General], with respect to any product or service similar to or competitive with any product or service sold or offered for sale by [General].

---

A covenant by an . . . agent not to compete with his [or her] employer . . . during the term of the employment . . . or thereafter, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer . . . . Any such restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant . . . as would be a reasonable restraint.

Unhappy with his employment situation at General, Kobs contacted Badger about a sales position with that company. When discussions began with Badger, Kobs sought the opinion of an attorney regarding the validity of the covenant in his contract with General. The attorney informed him that there was a "favorable likelihood that a court would . . . refuse to enforce [the] covenant." He cautioned Kobs, however, that his opinion was "subject to further research." Kobs did not contact the attorney again.

Kobs informed Badger of the covenant and told them he had been advised by an attorney that it was unenforceable. Aware that General had not enforced similar covenants in the past, Badger hired Kobs. When Kobs resigned from General, indicating that he had accepted a position with Badger, he was reminded, in writing, of the noncompetition provisions in his contract. However, when he began working for Badger, Kobs continued to call on approximately thirty of his former customers. While Badger claims to have established accounts with some of these customers prior to employing Kobs, General asserts that several of its customers followed Kobs to Badger.

General sued Kobs for violating the employment agreement and Badger for inducing him to do so. Kobs was eventually dismissed from the action pursuant to his agreement not to solicit his former accounts for a specified time, and General pursued its case against Badger.

Badger moved for summary judgment on grounds that the provisions of the covenant were overly broad and thus unenforceable. The trial court granted Badger's motion, concluding that the covenant was invalid *per se* because it was not limited to a specific geographical territory.

## I. Choice of Law

Before reaching the merits of the contract issue, we must ascertain the applicable law. General is a Virginia corporation and Kobs's employment contract provides that Virginia law should control its interpretation. The trial court concluded that Wisconsin law applies[3] and General disagrees. The issue is one of law, which we decide independently. *Ondrasek v. Tenneson*, 158 Wis. 2d 690, 694, 462 N.W.2d 915, 917 (Ct. App. 1990).

Wisconsin law permits parties to a contract to agree that the law of a particular jurisdiction will control their contractual relationship. *Bush v. National School Studios, Inc.*, 139 Wis. 2d 635, 642, 407 N.W.2d 883, 886 (1987); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1988). However, the supreme court has held that parties cannot, by contract, override fundamental policies of the state whose law would be applicable absent the choice of law provision. *Bush*, 139 Wis. 2d at 642, 407 N.W.2d at 886. Thus, if an important public policy in Wisconsin will be negated or contravened by applying Virginia law to determine the validity of the parties' agreement, we will apply Wisconsin law despite their agreement to the contrary.

In Wisconsin, a covenant not to compete is valid if it meets five requirements. *Pollack v. Calimag*, 157 Wis. 2d 222, 236, 458 N.W.2d 591, 598 (Ct. App. 1990).

---

[3] While the trial court initially stated in its decision that the covenant would be invalid under either Virginia or Wisconsin law, it applied Wisconsin law in striking down the covenant under sec. 103.465, Stats.

It must: (1) be necessary for the protection of the employer or principal; (2) provide a reasonable time restriction; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive to the employee; and (5) not be contrary to public policy. *Id.* at 237, 458 N.W.2d at 598.

Virginia law also applies "reasonableness" criteria in judging the validity of restrictive covenants:

> (1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than is necessary to protect the employer in some legitimate business interest? (2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his [or her] legitimate efforts to earn a livelihood? (3) Is the restraint reasonable from the standpoint of a sound public policy? *Paramount Termite Control Co. v. Rector*, 380 S.E.2d 922, 924 (Va. 1989).

Given that similarity, General contends that this case fits the general rule that choice of law provisions in a contract will be enforced where the two jurisdictions differ only in degree concerning the enforceability of covenants not to compete, and that the parties' choice of law will be disregarded only where application of that law would seriously conflict with a fundamental policy of the law of the state which would otherwise apply. *Barnes Group, Inc. v. C & C Prods., Inc.*, 716 F.2d 1023, 1031 (4th Cir. 1983).[4] According to

---

[4] In *Barnes Group*, the court refused to enforce the parties' choice of Ohio law with respect to a covenant not to compete in an Alabama salesman's employment contract. While the covenant would have been enforceable under Ohio's reasonableness standard, Alabama voids all such agreements as being contrary

General, because both Virginia and Wisconsin employ similar "reasonableness" standards in determining the validity of covenants not to compete, there is no violation of Wisconsin policy and the parties' choice of law provision should be enforced.

There is, however, a critical difference between sec. 103.465, Stats., and the law of Virginia. General suggests in its brief that Virginia law will enforce otherwise invalid agreements to the extent of such terms as may be said to be reasonable.[5] Wisconsin law, how-

---

to public policy, regardless of whether they may be reasonable in whole or in part. Thus, applying Ohio law would have violated Alabama's fundamental policy nullifying all covenants not to compete. *Id.* at 1032.

The *Barnes Group* court upheld the parties' choice of Ohio law to govern covenants with regard to salesmen in Maryland, South Carolina and Louisiana. Each of the four states employed a similar reasonableness standard in judging the validity of restrictive covenants. Thus, because each state "follow[ed] the same basic approach [in determining the validity of covenants not to compete] and differ[ed] only in particulars," the application of Ohio law did not upset any of the states' public policies. *Id.* at 1032 n.24.

With regard to the fundamental policy exception to enforcing the parties' choice of law provisions, the court stated:

> [T]he "fundamental policy" exception . . . does not come into play merely because the contractually chosen law touches on a matter of fundamental state concern. Rather, fundamental policy is impinged upon only when there are significant differences between the chosen law and that of the jurisdiction whose law otherwise would apply. *Id.* at 1031 n.19.

[5] General points to an unreported federal district court case, *Orkin Exterminating Co. v. Farmer*, No. 87-0221-R, 1988 U.S. Dist. LEXIS 16432, at *9-11 (W.D. Va. June 17, 1988), which it states has been cited with approval in Virginia state courts, upholding "partial enforcement" of a restrictive cove-

ever, as plainly stated in sec. 103.465, is that "[a]ny . . . restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable *even as to so much of the covenant . . . as would be a reasonable restraint*." (Emphasis added.)

Section 103.465, Stats., was enacted as a direct response to *Fullerton Lumber Co. v. Torborg*, 270 Wis. 133, 70 N.W.2d 585 (1955), where the effect of the supreme court's decision was to redraft an invalid provision of an employment agreement to make it enforceable.[6] In superseding *Fullerton Lumber*, sec. 103.465 established the policy in Wisconsin — unlike that in Virginia — that courts would no longer be permitted to give effect to an overall unreasonable covenant to the extent some portions thereof might be considered reasonable. *Streiff v. American Family Mut. Ins. Co.*, 118 Wis. 2d 602, 608, 348 N.W.2d 505, 509 (1984).

General also contends that where, as here, the contract provides that each of its provisions is severable from the rest, both Wisconsin and Virginia law will allow courts to selectively enforce such of its terms as

nant. However, General fails to cite any authority citing to *Orkin*, and it appears that Virginia law does not permit such reliance on unreported cases. *See Grajales v. Commonwealth*, 353 S.E.2d 789, 790 n.1 (Va. Ct. App. 1987) (unpublished memorandum opinions are not to be cited or relied upon as precedent except for the purpose of establishing res judicata, estoppel or the law of the case).

[6] The *Fullerton Lumber* court was reviewing a covenant not to compete which contained a ten-year restriction on the employee's future employment. The court concluded that while the ten-year restraint was unreasonable, three years would be a reasonable length of time under the circumstances and declared the covenant valid for a three-year period. 270 Wis. 2d at 148, 70 N.W.2d at 592.

may be considered reasonable. As we have indicated, we believe the language of sec. 103.465, Stats., negates any such assertion.[7]

It follows that applying Virginia law to the parties' contract would contravene a fundamental policy of the law of Wisconsin; as a result, we cannot enforce their choice of law provision.

## II. Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and only questions of law remain for decision. *Bantz v. Montgomery Estates, Inc.*, 163 Wis. 2d 973, 978, 473 N.W.2d 506, 508 (Ct. App. 1991). In reviewing a motion for summary judgment, we apply the standards set forth in sec. 802.08, Stats., in the same manner as the trial court, *Bantz*, 163 Wis. 2d at 977, 473 N.W.2d at 508, and will reverse where the trial court has incorrectly decided the legal issue. *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 297, 349 N.W.2d 733, 735 (Ct. App. 1984).

---

[7] We note, too, that sec. 103.465, Stats., was enacted to effect a policy of protecting weaker parties in the bargaining process: "laws prohibiting covenants not to compete, or that are designed to protect a weaker party against the unfair exercise of superior bargaining power by another party, are likely to embody an important state public policy." *Bush*, 139 Wis. 2d at 643, 407 N.W.2d at 887. *See also Streiff*, 118 Wis. 2d at 608-09, 348 N.W.2d at 509, where the supreme court stated that permitting courts to modify unenforceable agreements "encourage[s] employers possessing bargaining power superior to that of the employees to insist upon unreasonable and excessive restrictions, secure in the knowledge that the promise will be upheld in part, if not in full."

After hearing arguments in this case, the trial court ruled that the covenant not to compete was invalid *per se* because it did not include a specified territory, as required by sec. 103.465, Stats. Specifically, the trial court determined that the absence of a geographical restriction precluded Kobs from working "anywhere in the world with any firm that competed selling medical supplies in any area with his employer." The court also noted that the restriction "blanket[ed] the country" and prohibited Kobs from working "for any competitor in the same field for 18 months." As a result, the court deemed the covenant overly broad and "*per se* unreasonable."

The supreme court has held that territorial limits need not be expressed in geographical terms as an absolute prerequisite to a valid and enforceable agreement. *Hunter*, 101 Wis. 2d at 466, 304 N.W.2d at 755. In *Hunter*, two employees of an insurance company signed a restrictive covenant agreeing not to solicit, contact or do any competitive business with any individual who was a customer or client of their employer for a period of two years after leaving its employ. *Id.* at 462-63, 304 N.W.2d at 753. The agreement precluded the employees from contacting approximately 6,000 clients, despite the fact that, during their employment with the insurance company, they had knowledge of, and contact with, only 175 clients. *Id.* at 463, 304 N.W.2d at 754.

Relying on *Chuck Wagon Catering, Inc. v. Raduege*, 88 Wis. 2d 740, 277 N.W.2d 787 (1979), the trial court in *Hunter* found the territorial limitation unreasonable because it extended beyond those clients actually serviced by the employees. *Hunter*, 101 Wis.

2d at 463-64, 304 N.W.2d at 754.[8] On appeal, we held that the territorial limit need not be expressed in geographical terms, although we affirmed the trial court's conclusion that the agreement was invalid because it extended to clients with whom the employees had had no contact. *Hunter*, 101 Wis. 2d at 464, 304 N.W.2d at 754.

The supreme court agreed that under sec. 103.465, Stats., territorial limits need not be expressed in geographical terms. In so holding, the court concluded that, as opposed to a territorial limitation expressed in geographical terms — which would necessarily encompass both the employer's customers and potential customers — "[a] limitation expressed in terms of particular clients or customers more closely approximates the area of the employer's vulnerability to unfair competition by a former employee and does not deprive the employee of legitimate competitive opportunities to which he is entitled." *Id.* at 466, 304 N.W.2d at 755.

More importantly for our purposes, the supreme court, applying the traditional methodology for summary judgment cases, concluded that the record before it was inadequate to determine whether the restrictive covenant was reasonable as a matter of law. *Id.* at 471, 304 N.W.2d at 757. In so holding, the court stressed that because "the reasonableness of [restrictive covenants] turns upon the totality of the facts and circumstances surrounding them, the parties must be given a full opportunity to develop the necessary evi-

---

[8] In *Chuck Wagon*, the employee was a route salesperson, and the court held: "In Wisconsin a covenant is . . . reasonable as to territory if . . . it is limited to the route or customers [the employee] actually services." 88 Wis. 2d at 754, 277 N.W.2d at 793.

dentiary record." *Id.*[9] Accordingly, the court concluded that summary judgment was inappropriate because genuine issues of material fact existed with respect to the reasonableness of the covenant to protect the employer's legitimate concerns.

The same situation confronts us here, for, like the *Hunter* court, we are unable to determine on the record before us whether the agreement between General and Kobs is reasonably necessary to protect General's interests. The purpose of a covenant not to compete is to prevent, for a time, the competitive use of information or contacts gained as a result of the departing employee's association with the former employer. *Pollack*, 157 Wis. 2d at 237, 458 N.W.2d at 599. Protection of a business' stock of customers and their good will is a legitimate interest of the employer. *Id.* at 237-38, 458 N.W.2d at 599.

---

[9] The supreme court thus rejected a rule that any territorial limit beyond the scope of direct customer contact rendered the agreement *per se* unreasonable. The court stressed that where an employee is apt to have access to confidential business information, restrictive covenants are legitimately used to protect employers against the improper use of information about customers with whom the employee did not have actual contact. *Id.* at 469, 304 N.W.2d at 756-57. It went on to state that:

> [T]he determination of whether a restraint of this type is reasonably necessary for the protection of an employer can[not] be intelligently made without a consideration of the nature and character of such information, including the extent to which it is vital to the employer's ability to conduct its business, the extent to which the employee actually had access to such information, and the extent to which such information could be obtained through other sources. *Hunter*, 101 Wis. 2d at 470, 304 N.W.2d at 757.

In many businesses the relationship with customers is the most valuable asset of the enterprise. . . . Customer goodwill has value to the extent that a customer knows and feels he can rely upon the salesperson he is dealing with. In many cases a business's agent may be the sole contact customers have with that business. *Chuck Wagon*, 88 Wis. 2d at 751-752, 277 N.W.2d at 792 (footnote omitted).

The evidence in this case demonstrates that a substantial number of General's La Crosse-area customers began doing more business with Badger when Kobs began his employment there. Indeed, it is undisputed that Kobs, while working for Badger, continued to contact at least thirty of his former clients. The parties dispute, however, the reason for the shift of business from General to Badger: while General claims that customer loyalty caused its former clients to follow Kobs to Badger, Badger contends that it acquired the additional business because it was able to offer better prices and service.

Thus, any decision on the totality of the facts as to the reasonableness of the covenant will rest to a significant degree on whether such of General's customers as may have shifted some business to Badger did so because of loyalty to Kobs or for some other reason. And although the record contains affidavits relevant to the dispute, we are not convinced that the parties have had the opportunity to fully develop the necessary evidence.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

SUNDBY, J. (*dissenting*). I conclude that the covenant not to compete contained in Kobs's employment

contract is reasonable as a matter of law. I therefore dissent from our mandate insofar as we remand the cause to try the issue of reasonableness. I would direct the trial court to grant summary judgment to General Medical Corporation.

I agree with the majority that the trial court erred when it concluded that the covenant not to compete was invalid *per se* because it did not contain a territorial limitation. In *Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton*, 101 Wis. 2d 460, 467, 304 N.W.2d 752, 755 (1981), the court said: "[W]e hold that the territorial limitation of a restrictive covenant need not be expressed in geographic terms as an absolute prerequisite to a valid and enforceable agreement."

The majority concludes that *Hunter* requires that "the parties must be given a full opportunity to develop the necessary evidentiary record." *Id.* at 471, 304 N.W.2d at 757. However, in *Hunter*, the noncompetition agreements prohibited the employees from soliciting, contacting or otherwise doing any competitive business with "any individual, firm, corporation, partnership, organization or association *who was a customer or client of Agency*" during the prescribed period. (Emphasis added.) The covenant not to compete in Kobs's employment contract, however, only prohibits him from soliciting, selling or rendering services to:

> [A]ny of the customers solicited, sold to or serviced by me at any time during the 18 months immediately preceding termination of my employment with [General Medical Corporation], with respect to any product or service similar to or competitive with any product or service sold or offered for sale by [General Medical Corporation].

437

The *Hunter* court could not determine on the record before it whether the noncompetition agreements at issue were reasonable because the covenant was so broad. The court said: "We come to the principal issue of the case which is whether the instant agreements are invalid per se because they purport to prohibit [the employees] from soliciting even [the employer's] clients *whom they had not serviced and with whom they had had no contact.*" *Id.* at 467, 304 N.W.2d at 755 (emphasis added). The restrictive covenant at issue in this case does not prohibit Kobs from contacting or servicing General Medical Corporation's customers that he had not previously serviced.

This case is more similar to *Chuck Wagon Catering, Inc. v. Raduege*, 88 Wis. 2d 740, 277 N.W.2d 787 (1979), than it is to *Hunter*. In *Chuck Wagon*, the employee serviced a lunch route which Chuck Wagon had established and maintained as its own for six years. Over the two and one-half year period during which he acted as Chuck Wagon's agent, the employee had daily contact with the customers at each stop on the route. The court construed the restrictive covenant in *Chuck Wagon* to prohibit the employee from soliciting Chuck Wagon's former customers until its new drivers had an opportunity to become acquainted with the customers. *Id.* at 754, 277 N.W.2d at 793. The court concluded that the covenant was reasonable. *Chuck Wagon* allows us to conclude as a matter of law that it was reasonable for General Medical Corporation to protect its customer contacts by prohibiting Kobs from soliciting customers formerly serviced by Kobs for eighteen months after the termination of his employment. I would not put the parties to the inconvenience and

expense of trying an issue we may ultimately decide as a matter of law.