## In re CARVER BOAT CORPORATION, Debtor.

**Bankruptcy No. 91–22698–JES.**

United States Bankruptcy Court,
E.D. Wisconsin.

July 23, 1993.

James A. Lodoen, Timothy Y. Wong, Minneapolis, MN, for debtor.

John S. Bartholomew, Shawano, WI, for claimant.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

Carver Boat Corporation ("Carver"), the debtor in the above chapter 11 case, has objected to claim no. 644 of Keith Nelson ("Nelson"). In his claim, Nelson, who was laid off by Carver but later recalled to employment, seeks reinstatement of his claimed seniority rights under a purported contract with Carver. Carver asserts that there never was any employment contract and that Nelson had no fixed seniority rights. This dispute is now before the court on Carver's motion for summary judgment. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

The uncontroverted facts reveal that Carver filed its petition in bankruptcy under chapter 11 on April 19, 1991. On that date, Carver laid off all but 28 of its approximately 600 employees. Among those employees laid off was Nelson. Nelson is a truck driver, whose duties consist of delivering boats to dealers in different parts of the country. Nelson was first hired by Carver in January of 1977. On April 29, 1991, Carver recalled 6 truck drivers, but Nelson was not among this group. Nelson was, however, recalled later on November 18, 1991, and he continues to work for Carver as a truck driver.

Nelson maintains he should have been recalled on April 29, 1991, instead of November 18, 1991, because of his claimed seniority rights. Of the 6 drivers who were recalled on April 29, 1991, 3 had longer terms of service with Carver than Nelson. The remaining 3 were hired after Nelson was first employed by Carver. Nelson also asserts that, because he was improperly recalled "out of seniority," he now holds a lower seniority status. This has resulted in Nelson receiving less desirable truck runs and lower paying truck loads.

This controversy is ripe for summary judgment pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure and Rule 56 Federal Rules of Civil Procedure. Its disposition turns entirely upon a matter of law because there are no genuine issues of material fact involved. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ This court recognizes that summary judgment is an extreme remedy which should be exercised sparingly. There are, however, some situations where it is appropriate to grant summary judgment. That is the situation here.

■ The key inquiry centers upon whether a contractual relationship existed between Carver and Nelson. Nelson's claim of a contractual relationship is based upon an employee handbook given to him by Carver after he became employed as well as upon certain oral representations made by Carver representatives regarding his alleged seniority rights. If Nelson is unable to establish such an express contract of employment, he is an at-will employee, with no seniority rights.

■ It is incumbent upon this court to look to Wisconsin law for a determination of Nelson's substantive rights against Carver. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Ford,* 125 B.R. 735 (E.D.Tex.1991); *Mursch v. Van Dorn Co.,* 851 F.2d 990, 993 (7th Cir.1988). The controlling Wisconsin law on this subject is set forth in *Bantz v. Montgomery Estates, Inc.,* 163 Wis.2d 973, 473 N.W.2d 506 (Wis.Ct.App.1991), and *Ferraro v. Koelsch,* 124 Wis.2d 154, 368 N.W.2d 666 (Wis.1985). In *Bantz,* the court held that an employee handbook did not provide a discharged employee with an employment contract. The *Bantz* handbook merely outlined general rules, regulations, and disciplinary procedures. No contract—express or implied—existed. Citing *Ferraro, Bantz* observed that Wisconsin courts will not "by implication *alone* convert a handbook produced by an employer for the guidance and orientation of employees into an express contract." *Bantz v.*

*Montgomery Estates, Inc.*, 163 Wis.2d at 978–79. *Bantz* also declared that an employee handbook may only alter an at-will employment relationship if it contained express provisions from which it could reasonably be inferred that the parties intended to bind each other to a different relationship than an at-will relationship. *Ferraro v. Koelsch*, 124 Wis.2d at 168, 368 N.W.2d 666.

■ Unlike *Bantz*, *Ferraro*, based on its particular facts, held that a contractual relationship did exist. There are, however, significant differences between the *Ferraro* handbook and the handbooks in *Bantz* and in the case at bar. The *Ferraro* handbook contained language which clearly evinced an intent to create more than an at-will relationship. The Carver handbook was more akin to that in *Bantz*, than in *Ferraro*. The following specific language in the *Ferraro* handbook established that acceptance by an employee of the terms in the handbook created an employment contract:

> I hereby acknowledge having received and read the Hyatt Regency Milwaukee Employee's Handbook. Furthermore, I understand the policies and rules and accept them *as a condition of my continued employment* (emphasis added).

*Ferraro v. Koelsch*, 124 Wis.2d at 158, 368 N.W.2d 666. No such language exists in the *Bantz* or Carver handbooks. In particular, the Carver handbook states the following:

> Nothing contained in this book is to be construed as a guarantee of continued employment. (p. 1–2)

and:

> ... the Company does not guarantee continued employment to employees. (p. 2–1)

In *Ferraro*, an employee was obligated to provide 2–weeks' notice of termination pursuant to a commitment contained within the handbook. The Carver handbook states that, although an employee was "expected" to give two weeks' notification of intent to terminate employment, the employee had the right to terminate employment at any time. While the Carver handbook contains language dealing with seniority, as in the case of *Mursch v. Van Dorn Co.*, 851 F.2d at 995, it was without any contractual guarantee or obligation. The following language in the Carver handbook makes that point clear:

> *Generally* (emphasis added), employees will be recalled from lay off in the reverse order of the lay off. (p. 8–3)

In addition to the provisions referred to above, which disclaim any guarantee by Carver of continued employment, there are other provisions in the Carver handbook which do not appear in the Ferraro handbook. They are as follows:

> The Company reserves the right to change, at any time, the provisions of this handbook and any rule, policy, or procedure that is within the limits allowed by law. (p. 1–2)

and:

> ... these policies and benefits may change from time to time.... (p. 10–1)

All of these clauses clearly show that the Carver handbook merely established guidelines on seniority, rather than obligations, on the part of either Carver or its employees.

■ Nelson also has asserted that oral statements repeatedly made to him over the years by Carver officials that "we go by seniority" constituted binding promises upon Carver. The Seventh Circuit in *Mursch v. Van Dorn Co.*, 851 F.2d at 996, proclaimed that such oral statements were insufficient as a matter of law to constitute a binding commitment. *Mursch* held that a statement by a representative of the employer to an employee that "so long as you do your job, you will be here until you're a hundred" did not amount to a commitment of lifetime employment. The court stated that this type of oral statement amounted to encouragement and optimism in the context of a casual conversation and "should not be twisted and contrived into an expression of intent to create a binding contract of lifetime employment." *Mursch v. Van Dorn Co.*, 851 F.2d at 997–98. By the same token, the conversations between

Carver officials and Nelson regarding seniority were similarly casual, informal remarks, without any binding effect on Carver.

Nelson also argues that the bankruptcy court should exercise its equitable powers and restore to Nelson his seniority rights. The scope of the bankruptcy court's equity powers is not so broad as to enable it to restore seniority rights to an employee. Recently, in *Matter of Fesco Plastics Corporation, Inc.*, 996 F.2d 152 (7th Cir.1993), the Seventh Circuit Court of Appeals stated:

> [W]hen a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code.

*See also Matter of Lapiana*, 909 F.2d 221, 224 (7th Cir.1990).

Although Nelson has acknowledged that the primary remedy he is seeking is reinstatement of his claimed seniority rights, his proof of claim is more inclusive. It contains assertions of age discrimination and discrimination caused by Nelson having filed a workers' compensation claim against Carver and having been arrested in Montana on an assault charge. Nelson did present affidavits in response to Carver's motion for summary judgment. However, these affidavits are confined to the issue of seniority rights. When a motion for summary judgment is filed, it is the responsibility of the party opposing the motion to set forth specific facts demonstrating that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553; *Bank Leumi le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991); *Becker v. Tenenbaum–Hill Associates, Inc.*, 914 F.2d 107 (7th Cir.1990). Nelson is not entitled to rest upon the mere allegations made in his proof of claim. Under Fed. R.Civ.P. 56(e), where such party fails to respond to a motion for summary judgment by specific facts, summary judgment, if appropriate, shall be entered against that party.

Accordingly, Carver's motion for summary judgment is granted, and Nelson's claim no. 644 is disallowed in its entirety.