**Douglas CIESLAK, Plaintiff,**

v.

**BUFFALO COUNTY, Shane Crawford, individually and in his official capacity, Jon Wisneski, individually and in his official capacity, and Steve Weiss, individually and in his official capacity, Defendants.**

**No. 03–C–0145–C.**

United States District Court,
W.D. Wisconsin.

Jan. 9, 2004.

James G. Birnbaum, for Plaintiff.

Lisa M. Bergersen, Lindner & Marsack, S.C., Milwaukee, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

This is an action brought pursuant to state law and 42 U.S.C. § 1983, in which plaintiff Douglas Cieslak contends that defendants terminated him from his position as Buffalo County Land Conservationist in violation of his rights to due process and free speech and in breach of his contract of employment. Defendants Buffalo County, Shane Crawford, Jon Wisneski and Steve Weiss contend that plaintiff served at will, without a contract, and for that reason, was not entitled to any due process protections in connection with his termination. They deny that they terminated plaintiff because of his exercise of his First Amendment rights.

I conclude that defendants are entitled to summary judgment. Plaintiff has not adduced evidence from which a jury could find either that he had any legitimate claim of entitlement to continued employment with the county so as to implicate the due process clause or that his First Amendment rights were violated by his termination. His state law claim fails as well because he cannot show that he had any contractual right to employment with the county.

From the facts proposed by the parties, I find the following to be undisputed. In making that determination, I have considered as undisputed all facts that defendants proposed to which plaintiff's only "dispute" is that he has not had an opportunity to depose defendants. The magistrate judge advised the parties in his preliminary pretrial order that they were to conduct their "discovery in a manner that allows them to make or respond to dispositive motions within the scheduled deadlines." PPTC order, dkt. # 5, at 3. Plaintiff has not suggested any good reason why he could not have conducted the depositions of defendants in time to respond

appropriately to defendants' proposed findings of fact.

## UNDISPUTED FACTS

Plaintiff Douglas Cieslak began working for defendant Buffalo County as County Land Conservationist on October 25, 1999. He was appointed by the Land Conservation Committee; subsequently, the Buffalo County Board of Supervisors confirmed his appointment. The term of the Land Conservation Committee expired in April 2000. Plaintiff remained employed as Land Conservationist until his termination on April 24, 2002.

Defendant Shane Crawford began his employment with defendant Buffalo County in April 2000, starting as the county's Administrative Coordinator. At all relevant times, defendant Jon Wisneski was chairman of the Buffalo County Board and defendant Steve Weiss was vice-chairman.

During the time that plaintiff was employed, the county had in effect a Personnel Policy Manual that had been implemented on or about February 9, 1995. Plaintiff received a copy of the manual when he was hired. The cover letter to the manual states that it was "prepared as a guide and reference for all employees and members of management of all levels of supervisory responsibility . . . ." Aff. of Crawford, Exh. N, dkt. # 18, at i. The cover letter states also that "over time, there will need to be changes and updates" to the policy. *Id.* The manual itself states that it is "designed as a working guide for supervisory staff and personnel in the day-to-day administration of the county personnel program and should not be read as including the fine details of the policy, nor as forming an express or implied contract or promise that the policies discussed in it will be applied in all cases." *Id.* at 1. It goes on to say that "Administration may add to the Personnel Policy or revoke or modify it from time to time." *Id.*

On December 18, 2001, the Buffalo County Board of Supervisors voted to change the Administrative Coordinator position to a County Administrator position effective January 1, 2002. The board appointed defendant Crawford to the new position. Before the position changed, Crawford met with all the county department heads and explained his change in status, gave each head a copy of Wis. Stat. § 59.18 and a copy of his job description and explained that as of January 1, 2002, his new duties, powers and responsibilities would be as outlined in the statute and job description.

As County Land Conservationist, plaintiff worked with land owners, farmers and municipal governments to coordinate the implementation of state and federal conservation programs. His position was considered that of a department head. His employee evaluations showed the highest possible ratings and his personnel file contained no record of any disciplinary actions.

On March 28, 2002, plaintiff sent an email to Wisconsin State Legislator Barbara Gronemus, in which he discussed some proposed amendments to the Wisconsin Administrative Code concerning funding formulas. Plaintiff wrote in part as follows:

> I am sure you have heard the noise from Trempealeau County Government and Trempealeau County Farm Bureau. I support their efforts. However, I do not have the "balls" (due to the newness to the job) they do.

Defendant Crawford found the use of the term "balls" inappropriate in a communication with a state legislator. On April 16, 2002, defendant spoke with defendants Wisneski and Weiss and indicated that he had decided to terminate plaintiff's employment. Wisneski and Weiss agreed that the decision was appropriate.

On April 17, 2002, plaintiff called defendant Crawford to ask whether he could appear before a committee of the Wisconsin State Senate on April 18, 2002, to testify about proposed amendments to the state administrative code regarding the method of delivery and implementation of the state conservation program. Defendant Crawford told plaintiff he could testify. Crawford had decided he would terminate plaintiff's employment when plaintiff returned to the office the following week.

Defendant Crawford never discussed plaintiff's state senate testimony with him. On April 24, 2002, he and defendant Wisneski met with plaintiff to tell him of the decision to terminate his employment. Defendant Crawford's reasons for terminating plaintiff included his perception that plaintiff was unable or unwilling to keep routine office hours, that he was unwilling or unable to establish rapport with his co-workers, that he was unable to communicate professionally with state and local officials, that he lacked appropriate management skills and that he had falsified information about his department and his job responsibilities. In addition, Crawford had received complaints from land owners about plaintiff's demeanor and lack of "people skills."

Plaintiff's legislative testimony was not a factor in defendant Crawford's decision to terminate him. Defendant never referred to the testimony during the April 24 meeting in which he told plaintiff he was being terminated. He did mention the email to Representative Gronemus and the use of the word "balls." Defendant Crawford would have terminated plaintiff even if plaintiff had not used the word in his email.

## OPINION

### A. Due Process Claim

The United States Constitution provides procedural safeguards to public employees who face disciplinary measures, but only if the employees have a property interest in their jobs. *Board of Regents v. Roth,* 408 U.S. 564, 578, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). State law determines whether an employee has a "legitimate claim of entitlement" to his employment. *Id.* at 577, 92 S.Ct. 2701. Plaintiff contends that he has such a property interest in his job, not because he has civil service protections or a written contract or because any state statute or regulation gives him such an interest, but because the Buffalo County personnel policy manual operates as a contract of employment. He notes correctly that a personnel manual can convert an employment at-will relationship into a contractual one. *Ferraro v. Koelsch,* 124 Wis.2d 154, 368 N.W.2d 666 (1985). In *Ferraro,* the Supreme Court of Wisconsin found that the Hyatt Corporation's employee handbook was "an express contract replete with stated consideration—the promise of employment on stated terms and conditions by Hyatt and the promise by Ferraro to continue employment under those conditions." *Id.* at 164, 368 N.W.2d 666. Hyatt agreed that it would discharge non-probationary employees only for just cause; in return, Ferraro agreed to accept Hyatt's policies and rules as a condition of his continued employment and to give two weeks' notice before leaving employment.

In cases decided after *Ferraro,* the Wisconsin courts have held that a personnel manual will convert an at-will employment relationship into a contractual one only if it "contains express provisions from which it reasonably could be inferred that the parties intended to bind each other to a different relationship [from one that is at-will]." *Olson v. 3M Co.,* 188 Wis.2d 25, 54, 523 N.W.2d 578 (Ct.App.1994) (citing *Bantz v. Montgomery Estates, Inc.,* 163 Wis.2d 973, 979, 473 N.W.2d 506, 508 (Ct.App.1991)); *see also Helland v. Froedtert Memorial*

*Lutheran Hosp.,* 229 Wis.2d 751, 756, 601 N.W.2d 318 (1999) (employee handbook did not create contract of employment; employer reserved right to take any disciplinary action against employees it deemed appropriate regardless of procedures in handbook and to modify handbook unilaterally and provided explicitly in handbook that it did not create any contractual rights).

Defendants rely on the post-*Ferraro* cases in arguing that the Buffalo County personnel manual is not a contract of employment. Their reliance is reasonable. Those cases concerned manuals similar to the one at issue in this case. They did not contain express provisions that bound the parties to a contractual relationship as in *Ferraro.* Instead, they reflect the employer's intention that the handbook will serve only as a guide and not as mutual promises between the employer and employee.

Unlike the handbook at issue in *Ferraro,* the Buffalo County personnel manual cannot be characterized as "a document by which each party made promises to the other in the expectation that the promises would be kept and the agreement to keep them would be binding." *Ferraro,* 124 Wis.2d at 165, 368 N.W.2d 666. The county avoided such a characterization by stating at the beginning of the manual that employees should not read it "as forming an express or implied contract or promise that the policies discussed in it will be applied in all cases," and that "[a]dministration may add to the Personnel Policy or revoke or modify it from time to time." Aff. of Shane Crawford, Exh. N, dkt. # 18, at 1. In the face of these statements, plaintiff cannot argue with any plausibility that the manual changed his employment relationship from one in which he could be terminated at will to one in which he could be terminated only on a showing of just cause. He had no claim of entitlement to continued employment and therefore, no entitlement to the due process protections that would inhere in a permanent entitlement to a job. I conclude that defendants are entitled to summary judgment on plaintiff's due process claim.

In addition to arguing that plaintiff had no contractual right to continued employment arising out of the personnel manual, defendants argue that Wis. Stat. § 59.18 makes his employment at will as a matter of law. It is not necessary to reach this argument because I have found that plaintiff is an at will employee.

### B. *First Amendment Claim*

█ Although plaintiff was only an at-will employee of Buffalo County and therefore subject to termination without due process or just cause, the United States Constitution protected him and all other public employees from termination in violation of the Constitution. The county was not free to fire him because of his sex or race or because he had spoken out on a matter of public concern. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 278, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (non-tenured teacher could not be fired because of his exercise of First Amendment rights; board had to prove it would have terminated him even if he had not made the statements he made); *Trejo v. Shoben,* 319 F.3d 878, 884 (7th Cir.2003) (assuming that university could not terminate professor in retaliation for his exercise of First Amendment rights although professor was non-tenured and had only one-year appointment).

█ In his complaint, plaintiff alleged that defendant Crawford fired him because he sent an email to a state legislator and because he testified before the state legislature. However, plaintiff has adduced no evidence in opposition to defendants' motion for summary judgment that would support the allegations in his complaint. He has not put into dispute defendants'

proposed findings of fact to the effect that defendant Crawford did not take plaintiff's legislative testimony into consideration when he decided to terminate plaintiff and that he did not approve of plaintiff's use of the word "balls" in his email to the legislature but would have terminated plaintiff even if plaintiff had never used the word. Without any evidence, plaintiff has no basis on which to argue that a jury could find in his favor on this claim. Therefore, summary judgment will be granted to defendants.

### C. State Contract Claim

Plaintiff's state claim depends on the proper characterization of the personnel manual. Now that I have determined that it does not give plaintiff any contractual rights, it cannot support plaintiff's claim that the county breached a contract of employment when it terminated him. Therefore, summary judgment will be granted on this claim as well.

### ORDER

IT IS ORDERED that the motion of defendants Buffalo County, Shane Crawford, Jon Wisneski and Steve Weiss for summary judgment is GRANTED. The clerk of court is directed to enter judgment for defendants and close this case.