**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 4, 2022
Decided October 20, 2022

**Before**

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 22-1521

| | |
|---|---|
| TODD A. BARKOW, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of |
| | Wisconsin. |
| *v.* | |
| | No. 20-cv-1030-jdp |
| SCHOOL DISTRICT OF ATHENS and | |
| DEAN ELLENBECKER, | James D. Peterson, |
| *Defendants-Appellees*. | *Chief Judge*. |

**ORDER**

Todd Barkow sued his former employer, a school district, asserting that it violated his federal due process rights when it did not conduct a hearing before deciding not to employ him after his contract expired. The district court concluded that Barkow did not have a property right in continued employment and entered summary judgment against him. Because Barkow did not raise a genuine dispute about whether the district promised him further employment, we affirm.

Under a series of one-year contracts, Barkow worked as the building and grounds supervisor for the School District of Athens, Wisconsin, from 2011 to 2019. The

contract at issue, for July 2018 through June 2019, does not contain language about renewal or mention employment after the end date.

During his tenure, some of Barkow's communications caused offense or needed correction. In 2017, for example, after the school board introduced a performance pay plan, Barkow emailed the board to question why it was necessary. Timothy Krueger, a board member, felt that Barkow had inappropriately challenged the board's authority. Barkow's supervisor, who was otherwise satisfied with Barkow's performance, also had to instruct Barkow about how to better respond to inquiries from coworkers and community members.

In August 2018, Barkow sent several emails criticizing work being done on the school district's baseball diamond. Local construction companies had volunteered to refurbish the baseball diamond to commemorate a student who had died earlier that year. Defendant Dean Ellenbecker, who had two relatives on the school board, offered his construction company's services for the project. Part way through the work, Barkow noticed standing water near the area. He photographed it, and asked about it in an email to two school board members, other school district officials, and Ellenbecker. Ellenbecker responded that the issue had "already been taken care of." Barkow emailed the same recipients again because he had noticed the water two days in a row and "[did] not see where anything was taken care of."

Barkow's emails offended Ellenbecker. After sending an email telling Barkow to "stick [his] picture up [his] ass," Ellenbecker emailed complaints about Barkow to the two school board members and school district officials. He described how Barkow was "running his mouth down at happy hour" about progress on the baseball diamond and complained that, despite criticizing the work, Barkow did not offer to help with the project. Ellenbecker wrote: "As far as I'm concerned, if he's involved with the school, I won't do another project for Athens school district."

Several weeks after this incident, the school board imposed discipline on Barkow. In late September, the board's attorney and the superintendent met with Barkow. The attorney told Barkow that the school board was unhappy with his attitude and that multiple community members and coworkers had complained about him. Barkow was placed on paid administrative leave. Then the attorney sent Barkow a letter listing six areas of unsatisfactory job performance and invited Barkow to meet with the board on October 24. The attorney explained that this meeting was not a hearing, but an informal opportunity for Barkow to present his views. Barkow attended the meeting and discussed the areas of his performance the board had highlighted in its letter.

Barkow's presentation at the October 24 meeting did not reassure the school board. In early November, the school board's attorney sent Barkow a document summarizing the board's conclusions. (The record does not contain any contemporaneous documentation of the meeting.) This "Notice of Performance Deficiencies and Performance Expectations" (the "Notice") criticized Barkow's general attitude and his behavior at the meeting. The Notice also described six areas in which his performance was unsatisfactory and how the board wanted him to improve. The last three paragraphs explained how the board would evaluate Barkow's performance and discussed the continuation of his employment beyond the contract's expiration:

> The School Board will evaluate your interactions and your performance on a bi-monthly basis over the next seven months. The School Board will decide whether or not you will continue employment with the School District at the expiration of your current employment contact [sic] on June 30, 2019. You will not receive a new employment contract from the School District but rather will be advised of the School Board decision regarding your continued employment in writing.
>
> You will be expected to perform your duties as Buildings and Grounds Supervisor in accordance with the expectations described in this document. You will also be expected to exercise appropriate professional decision-making responsibilities regarding the maintenance and condition of the school buildings and the projects that are assigned to you for continued upkeep and maintenance of the School District buildings.
>
> Failure to properly perform your duties will result in a decision to discontinue your employment at the end of your current employment contract.

In April 2019, the school board informed Barkow that it would not continue employing him the next year. Barkow sued the school district under 42 U.S.C. § 1983, alleging the termination of his employment without a hearing violated his right of due process. (Barkow also asserted an equal protection violation but later dismissed the

claim voluntarily.) He also sued Ellenbecker under Wisconsin law for tortious interference with his employment.

After discovery, the defendants moved for summary judgment, and the district court granted the motion. It concluded that neither Barkow's employment contract nor the Notice created a property interest in continued employment. It therefore entered judgment for the school district on the due process claim. It then relinquished supplemental jurisdiction over the state-law claim and dismissed it without prejudice.

On appeal, Barkow concedes that the employment contract did not create a property interest. Instead, he argues that the Notice created a property interest because, by negative implication, it promised that if he fulfilled its requirements, he could continue working beyond his 2018–2019 contract. We review the grant of summary judgment de novo, construing all facts and reasonable inferences in favor of Barkow. *See Kvapil v. Chippewa County*, 752 F.3d 708, 712 (7th Cir. 2014).

Property interests do not come from the federal Constitution but originate from an "independent source" such as "state statutes, state or municipal regulations or ordinances, and contracts with public entities." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 773 (7th Cir. 2021) (internal quotation marks omitted). To survive summary judgment on the issue of whether the Notice gave him a property interest, Barkow had to show that the Notice "clearly limited" the school district's discretion to end his employment after the contract's term elapsed. *See Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011). Because Barkow worked in Wisconsin, that state's law controls. *Id.*

Under Wisconsin law, the legality of a non-renewal of employment, like a discharge, depends on whether employment is "at-will" or can be ended only for cause based on a contract or other terms of employment. *See Beischel v. Stone Bank Sch. Dist.*, 362 F.3d 430, 436 (7th Cir. 2004) (assessing whether contract non-renewal is "at-will" or "for-cause"). Here, Barkow concedes that based on his yearly contract, renewal (or continuation of employment without a new contract) was at-will. He admits that the contract contains no provision for, or presumption of, employment past the end date, based on his performance or any other reason. Thus, the contract permitted the school district to deny further employment at its discretion. *See id.* (employee had no property interest in the renewal of her two-year contract because employer could deny renewal at its discretion); *see also Roth*, 408 U.S. at 578 (no entitlement to renewal because terms of employment specified an end date and did not discuss renewal).

Barkow argues that his entitlement to future employment stemmed from the Notice. The question is therefore whether this document modified the at-will nature of Barkow's employment outside the contract year. It does not.

A document containing guidance for an employee, such as a handbook or a performance improvement plan, can modify an at-will employment relationship. To do so, however, it must contain "express provisions from which it reasonably could be inferred that the parties intended to bind each other to a different relationship." *Bantz v. Montgomery Ests., Inc.*, 473 N.W.2d 506, 507–08 (Wis. Ct. App. 1991) (personnel policy did not alter at-will employment); *see also Vorwald v. Sch. Dist. of River Falls*, 482 N.W.2d 93, 96 (Wis. 1992) (same); *cf. Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 269 (7th Cir. 1995) (statements in employment contract describing "sufficient cause" for termination did not overcome presumption of at-will status). In *Ferraro v. Koelsch*, for example, the Wisconsin Supreme Court held that "explicit promises" in the employee handbook— such as the employer promising to terminate some employees only for just cause, if employees promised to give two weeks' notice before leaving—transformed the employment relationship from at-will to for-cause. 368 N.W.2d 666, 671–72 (Wis. 1985). *Compare with Bantz*, 473 N.W.2d at 510 (finding no modification of at-will status because the employee handbook did not expressly mandate termination for just cause).

Here, the Notice contains no express provisions, such as explicit promises or mutually beneficial commitments, from which we can infer that Barkow and the school district intended to modify the at-will relationship. The Notice mentions potential renewal just twice. First, it says the school board would decide "whether or not [Barkow] will continue employment with the School District at the expiration of [Barkow's] current employment contact [sic] on June 30, 2019." Second, it relates that Barkow would be "advised of the School Board decision regarding [his] continued employment in writing." Neither of these is a promise to renew based on satisfactory performance. Moreover, the board issued the Notice because it was unhappy with Barkow's performance, which belies an inference that the board gratuitously increased its obligation to him and "intended to bind" itself to for-cause termination. *Bantz*, 473 N.W.2d at 507–08; *cf. Chapman v. B.C. Ziegler & Co.*, 839 N.W.2d 425, 431 (Wis. Ct. App. 2013) (contract interpretation should avoid "unreasonable and absurd" results.)

Barkow insists, however, that a right to keep his position is implied in the last sentence of the Notice: "Failure to properly perform your duties will result in a decision to discontinue your employment at the end of your current employment contract." This, he contends, promises that his employment would continue if he did improve in the six outlined areas. He attempts to distinguish *Colburn v. Trustees of Indiana University*,

973 F.2d 581 (7th Cir. 1992), which the district court cited. *Colburn* explained that promotion or retention criteria—like the Notice's performance expectations— do not restrict an employer's discretion to end employment and thus do not, alone, create a property right. *Id.* at 589–90.

Barkow argues that, unlike the subjective criteria in *Colburn*, the Notice listed six specific and objective criteria and therefore guaranteed Barkow's employment if he fulfilled them. For support, he relies on *McCammon v. Indiana Department of Financial Institutions*, 973 F.2d 1348 (7th Cir. 1992), and *Cheli v. Taylorville Community School District*, 986 F.3d 1035 (7th Cir. 2021). He argues these cases establish that "[w]here the only thing a government employer says about an employee's job security is that he or she may be dismissed if any one of a set of specified conditions occurs, that statement is an implied promise that, if none of the specified conditions occurs, the employee will not be dismissed." But even assuming that this interpretation is correct, the Notice's performance-improvement criteria were not the "only thing" the school board said about his employment. His contract was the main event; it set out the terms of his employment, which, the parties agree, did not include a right of continued employment. The cases are further distinguishable because the employment relationships at issue were governed by a statute, *McCammon*, 973 F.2d at 1349–50, and a collective bargaining agreement, *Cheli*, 986 F.3d at 1037, 1039. The Notice, by contrast, did not bind the parties to any employment terms other than those in the contract.

For these reasons, we AFFIRM the judgment.